IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARRIE ANNE VICARI,                )
                                   )
            Plaintiff,              )
                                   )
     v.                             )
                                   ) Civil Action No. 14-1372
CAROLYN W. COLVIN,                 )
ACTING COMMISSIONER OF             )
SOCIAL SECURITY,                   )
                                   )
            Defendant.              )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 23rd day of March, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability

to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her applications for DIB and SSI on March 24, 2011, alleging disability beginning on December 31, 2008, due to depression, anxiety, bipolar disorder and ulcers. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on February 11, 2013, at which plaintiff appeared and testified while represented by counsel. On April 18, 2013, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on August 5, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has a high school education and some college, was 32 years old on her alleged onset date, and is classified a younger individual under the regulations. 20 C.F.R. §§404.1563(c), 416.963(c). Plaintiff has past relevant work experience as a phlebotomist and a receptionist, but she has not engaged in substantial gainful activity at any time since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ first found that plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, peptic ulcers, cervico-thoracic scoliosis, congenital fusion at C5-6, bilateral carpal tunnel syndrome, status post right carpal tunnel release, obesity, major depressive disorder, anxiety disorder and substance abuse disorder; however, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

AO 72
(Rev. 8/82)

The ALJ next found that plaintiff retains the residual functional capacity to perform a range of work between sedentary and light with a sit/stand option and a number of additional limitations. Plaintiff is restricted to lifting 10 pounds occasionally and 3 to 5 pounds frequently and can perform only occasional postural maneuvers, but she can never crawl. In addition, plaintiff is limited to simple, routine, repetitive work that is not fast paced, as well as simple work decisions. Further, plaintiff is limited to incidental collaboration with the public and co-workers, and a maximum of 30 minutes of collaboration with a supervisor in a workday. Finally, plaintiff must avoid cold air temperatures and moving machinery (collectively, the "RFC Finding").

The ALJ concluded that plaintiff is unable to perform her past relevant work because it exceeds her residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as a mail clerk, packer or alarm monitor. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment;

(3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity.[1] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh certain medical opinions; (2) the RFC Finding does not account for all of plaintiff's limitations; (3) the hypothetical question posed to the vocational expert was incomplete; and (4) the ALJ did not properly evaluate plaintiff's credibility. For reasons explained below, each of these arguments is without merit.

Plaintiff first argues that the ALJ failed to properly weigh the medical opinions of Dr. Hugh Shearer, who was her primary care physician, Dr. Patricia Jarrett and Dr. Linda Humpreys, who were her treating psychiatrists, and Dr. Robert Eisler, who performed a one-time psychiatric evaluation of plaintiff. According to plaintiff, the ALJ should have given their respective opinions substantial weight. For reason explained below, we conclude that the ALJ fully considered and properly weighed the medical opinions issued in this case.

Dr. Shearer completed a physical capacity evaluation form report on which he indicated that plaintiff would need to lie down two hours during the workday. (R. 575). The ALJ gave Dr. Shearer's opinion on that matter little weight because he found it was unsupported by objective findings. (R. 28).

---

[1]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a)(1), 916.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

%AO 72
(Rev. 8/82)

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). Under this standard, the ALJ properly determined that Dr. Shearer's opinion was entitled to little weight.

As the ALJ explained, Dr. Shearer's opinion that plaintiff purportedly needs to lie down two hours during an eight-hour workday is inconsistent with other evidence of record. The ALJ noted that a lumber MRI taken in July, 2012, showed only "mild multilevel degenerative changes." (R. 28, 552). In addition, as the ALJ observed, plaintiff has not undergone surgery or other aggressive treatment for her back problems. Further, Dr. Shearer's treatment note of January 21, 2013, states "[p]ain is controlled for sedentary work/ADL." (R. 584). Dr. Shearer's opinion that plaintiff could engage in sedentary work and activities of daily living undercuts his assessment that she would need to lie down two hours during the workday. Moreover, Dr. Shearer's records do not otherwise offer any support for his opinion that plaintiff must lie down for two hours during the workday. Accordingly, the court finds no error in the ALJ's consideration and weighing of Dr. Shearer's opinion.

Plaintiff next complains that the ALJ improperly disregarded GAF scores issued by Drs. Jarrett, Humphreys and Eisler and gave their opinions inadequate weight. Plaintiff is incorrect.

GAF is a numeric scale that has been used by mental health clinicians and physicians to rate subjectively the social, occupational and psychological functioning of adults. However, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale as a measurement tool. See Hughes v. Commissioner of Soc. Sec., 2016 WL 231676, at *2 n.2 (3d Cir. Jan. 20, 2016) (noting that DSM-5 abandoned the GAF scale). Moreover, courts have recognized that a claimant's GAF score is not determinative of disability.

See Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009) (recognizing that GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and determining that a low GAF score is not conclusive evidence of a mental disability); Wind v. Barnhart, 2005 WL 1317040, *6 n.5 (11th Cir. 2005) (noting that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs). Although one's GAF score alone is not controlling, the ALJ's decision makes clear that he considered plaintiff's various GAF scores and assigned that evidence appropriate weight.

The ALJ explained that he gave Dr. Jarrett's findings and GAF assessment of 65 significant weight. (R. 28, 496). The ALJ's decision in that regard is supported by Dr. Jarrett's treatment notes which indicate plaintiff was pleasant and cooperative, she had organized thoughts, fair judgment and insight, good attention and generally intact memory for fair and recent events. (R. 439). In addition, Dr. Jarrett rated plaintiff as having unlimited ability to follow work rules, use judgment, function independently, maintain attention and concentration, maintain personal appearance and behave in an emotionally stable manner and fair ability to demonstrate reliability. (R. 494-95). After reviewing the record, we find that the ALJ appropriately gave Dr. Jarrett's findings substantial weight.[2]

Likewise, the ALJ properly determined that GAF scores of 30 issued by Dr. Eisler and 50 issued by Dr. Humpreys were entitled to little weight. (R. 28). Dr. Eisler evaluated plaintiff on only one occasion and rated her GAF score at 30, which indicates serious mental health symptoms.

---

[2]The ALJ gave substantial weight to the majority of Dr. Jarrett's findings; however, plaintiff complains that the ALJ gave inadequate weight to Dr. Jarrett's GAF rating of 45 on one occasion. (R. 440). The ALJ was not required to accept every finding made by Dr. Jarrett, especially one that was inconsistent with the majority of her findings discussed above indicating plaintiff's mental functioning was within normal limits. As the Third Circuit has explained, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." Wilkinson v. Commissioner of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014).

(R. 27, 498). As the ALJ noted, despite Dr. Eisler's GAF rating, he did not recommend the intensive care that would be required for an individual with such serious mental limitations. Moreover, Dr. Eisler's low GAF score is not supported by his examination findings, which indicated plaintiff's mental status performance was adequate. (R. 28, 497-98). Similarly, Dr. Humpreys' mental status examination indicated plaintiff was alert and fully oriented, she had good judgment and insight and average cognitive function. (R. 651). Therefore, the ALJ correctly decided to attribute little weight to GAF scores issued by Dr. Eisler and Dr. Humpreys because they were not supported by the record.

Plaintiff next argues that the RFC Finding fails to account for Dr. Shearer's opinion that plaintiff must lie down two hours during the workday, as well as mental limitations identified by Dr. Eisler. As already explained, the ALJ properly gave the opinions of Dr. Shearer and Dr. Eisler little weight, thus the ALJ was not required to include in the RFC Finding any unsubstantiated limitations they identified. However, although the ALJ assigned little weight to the opinions proffered by Dr. Shearer and Dr. Eisler, he nonetheless gave plaintiff the benefit of the doubt in crafting the RFC Finding by sharply limiting plaintiff to accommodate her credibly established physical and mental limitations.

Plaintiff also argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not include the limitations identified by Dr. Shearer and Dr. Eisler. As discussed above, the ALJ properly discounted Dr. Shearer's and Dr. Eisler's assessment, thus there was no need for the ALJ to incorporate their findings in the hypothetical question.

An ALJ's hypothetical to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ's hypothetical incorporated all of plaintiff's limitations resulting from

AO 72
(Rev. 8/82)

her impairments that were supported by the evidence of record, including all of the factors that were the basis of the RFC Finding. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform work that exists in the national economy.

Plaintiff's final argument - that the ALJ did not properly evaluate her credibility concerning her subjective complaints of pain - also is without merit. As required by the Regulations, the ALJ evaluated plaintiff's credibility by considering all of the relevant evidence in the record, including plaintiff's own statements about her symptoms and limitations, her activities of daily living, the medical evidence of record, the extent of plaintiff's treatment and the opinions of physicians who treated and examined her. See 20 C.F.R. §§404.1529(c)(1) and (c)(3), 416.929(c)(1) and (c)(3); Social Security Ruling 96-7p. The ALJ then considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect her ability to work. 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4). The ALJ concluded that the objective evidence is inconsistent with plaintiff's allegation of total disabling limitations, and thus determined that plaintiff's testimony regarding her pain and limitations was not entirely credible. (R. 23-34). This court finds that the ALJ adequately explained the basis for his credibility determination, (R. 24-28), and is satisfied that such determination is supported by substantial evidence. See Schaudeck v. Commissioner of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999) (an ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony).

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's

AO 72
(Rev. 8/82)

- 8 -

findings and conclusions are supported by substantial evidence and are not otherwise erroneous.

Therefore, the decision of the Acting Commissioner must be affirmed.

s/ Gustave Diamond  
Gustave Diamond  
United States District Judge

cc: Christine M. Nebel, Esq.
    220 South Main Street
    Suite D
    Butler, PA 16001

   Michael Colville
   Assistant U.S. Attorney
   700 Grant Street
   Suite 4000
   Pittsburgh, PA 15219